

FILED

MAY 20 2022

ZACK WALLACE, CIRCUIT CLERK

D.C.

## IN THE CIRCUIT COURT OF HINDS COUNTY, MISSISSIPPI
### SECOND JUDICIAL DISTRICT

**BARBARA EVANS**                                                                    **PLAINTIFF**

**v.**                                          NO.  22 - 316

**HINDS COMMUNITY COLLEGE,**
**STEPHEN VACIK, ANDREA JANOUSH,**
**SHERRY BELLMON, KRISTI JOHNSON,**                              **DEFENDANTS**
**ROBIN PARKER, and JOHN DOES 1-10**                          **(JURY TRIAL DEMANDED)**

### COMPLAINT

### PARTIES

1. Plaintiff Barbara Evans is an adult resident of Mississippi.

2. Defendant Hinds Community College (HCC) is a Mississippi community college
   organized under Miss. Code Ann. § 37-29-1.

3. At the time of the events at issue here, Defendant Stephen Vacik was the president of
   HCC.

4. At the time of the events at issue here, Defendant Andrea Janoush was HCC's vice
   president of human resources.

5. At the time of the events at issue here, Defendant Sherry Bellmon was HCC's vice
   president of instruction, career & technical education.

6. At the time of the events at issue here, Defendant Kristi Johnson was Plaintiff's
   immediate supervisor and HCC's director of adult education.

7. At the time of the events at issue here, Defendant Robin Parker was HCC's district dean
   of community and economic development and dean of career and technical education.

8. Defendant John Does 1-10 are agents or employees of Defendant HCC who have harmed
   Plaintiff but have not yet been identified.

EXHIBIT "A"

JURISDICTION

9.  Jurisdiction is proper in this Court under Miss. Code. Ann. § 97-7-81 because it arises

    under laws which are not exclusively cognizable in some other court.

VENUE

10. Venue is proper in this Court under Miss. Code Ann. § 11-11-3 because the events that

    caused the injury occurred in Raymond, Hinds County, Mississippi.

JURY DEMAND

11. Plaintiff demands a jury trial on all issues so triable.

FACTS

12. Barbara Evans worked for HCC at its Utica branch as an adult education instructor for

    approximately eight years.

13. In this work, she entered into a series of contracts with HCC.

14. The most recent contract was in 2020.

15. On or around June 29, 2020, Plaintiff and Defendant HCC entered into an employment

    contract. Exhibit 1.

16. Per this employment contract, Plaintiff would work as an ABE/MI-Best Instructor for

    Defendant HCC. *Id.*

17. Per this employment contract, Defendant HCC would pay Plaintiff an annual salary of

    $41,150. *Id.*

18. This employment contract had a fixed term from July 1, 2020, to June 30, 2021. *Id.*

19. Under this employment contract, Defendant HCC could only terminate Plaintiff's

    employment for certain reasons. *Id.*

20. Defendant HCC could terminate Plaintiff's employment "[i]n the event of a reduction or termination" of "state and or federal funds." *Id.*

21. Defendant HCC could terminate Plaintiff's employment "due to employment performance or deficiency in program performance." *Id.*

22. Defendant HCC could not terminate Plaintiff's employment for any other reason. *Id.*

23. Under this employment contract, Plaintiff had a property interest in her employment with Defendant HCC.

24. Plaintiff also lived on HCC property.

25. Plaintiff and Defendant HCC had entered into a lease contract for housing on HCC's Utica campus. Exhibit 2.

26. Per this lease contract, Plaintiff would pay $250 in monthly rent for housing on Defendant HCC's Utica campus. *Id.*

27. Per this lease contract, Defendant HCC would provide Plaintiff with housing on Defendant HCC's Utica campus. *Id.*

28. This lease contract had a fixed term from June 1, 2020, to June 31, 2021. *Id.*

29. Under this lease contract, Defendant HCC could only terminate Plaintiff's lease for certain reasons. *Id.*

30. Defendant HCC could terminate Plaintiff's lease if Plaintiff failed or neglected to maintain the premises. *Id.*

31. Defendant HCC could terminate Plaintiff's lease if Plaintiff defaulted on her rent. *Id.*

32. Defendant HCC could not terminate Plaintiff's lease for any other reason. *Id.*

33. Under this lease contract, Plaintiff had a property interest in her housing on Defendant HCC's Utica campus.

34. This lease contract was "subject to, and governed by, the duly enacted policies and procedures adopted by the Board of Trustees of the Hinds Community College District."

    *Id*.

35. In addition, the employment contract stated that HCC could only terminate Plaintiff's lease "in accordance with the policies and procedures of Hinds Community College." Exhibit 1.

36. Defendant HCC has a policy titled "Policy 1015 - Employee Due Process." Exhibit 3.

37. This policy reads:

    > The rights of professional employees to due process of law shall not be abridged. When any such employee presents a complaint; the college shall ensure that the complaint is handled according to currently advisable procedures of due process. College officials are responsible to stay informed concerning the requirements of procedural due process and its changing interpretation by courts.

    *Id*.

38. This policy guarantees procedural due process to professional employees of Defendant HCC.

39. Plaintiff was a professional employee of Defendant HCC.

40. Policy 1015 was incorporated in Plaintiff's employment contract.

41. Policy 1015 was incorporated in Plaintiff's lease contract.

42. Through this incorporation, Plaintiff had a contractual right to procedural due process before having her employment or lease terminated..

43. Defendant HCC has a procedure titled "Procedure 1015." *Id*.

44. In pertinent part, this procedure reads:

    > It is the responsibility of the President's Cabinet, individually and collectively, to ensure that in their area of responsibility, there shall be no

abridgement of the rights of professional level employees to due process of law.

*Id.*

45. Per Procedure 1015, the president of Defendant HCC and the members of the president's cabinet are responsible for any violations of procedural due process suffered by professional employees of Defendant HCC.

46. At the time of the events at issue here, Defendant Vacik was responsible for any violations of procedural due process suffered by professional employees of Defendant HCC.

47. At the time of the events at issue here, Defendant Janoush was responsible for any violations of procedural due process suffered by professional employees of Defendant HCC.

48. At the time of the events at issue here, Defendant Bellmon was responsible for any violations of procedural due process suffered by professional employees in Defendant HCC's Career and Technical Center.

49. On or around July 24, 2020, Defendant Vacik wrote Plaintiff a letter. Exhibit 4.

50. In this letter, Defendant Vacik wrote that Defendant HCC was "ending the term of [Plaintiff's] employment effective July 31, 2020." *Id.*

51. In this letter, Defendant Vacik wrote that Defendant HCC was terminating Plaintiff "upon the recommendation of [Plaintiff's] direct report, [Defendant] Johnson." *Id.*

52. In this letter, Defendant Vacik wrote that Defendant HCC was terminating Plaintiff "upon the . . . approval of [Defendant] Parker." *Id.*

53. Defendant HCC terminated Plaintiff at least in part because of Defendant Johnson's recommendation.

54. Defendant HCC terminated Plaintiff at least in part because of Defendant Parker's approval.

55. In this letter, Defendant HCC did not provide any grounds for Plaintiff's termination. *Id.*

56. In this letter, Defendant HCC did not state that Plaintiff was being terminated due to a reduction or termination of state or federal funds. *Id.*

57. In this letter, Defendant HCC did not state the Plaintiff was being terminated due to Plaintiff's performance or deficiency in program performance. *Id.*

58. By terminating Plaintiff for a reason not contractually authorized, Defendant HCC breached its employment contract with Plaintiff.

59. Before issuing this termination letter, no Defendant gave Plaintiff any pre-deprivation notice of the recommendation of termination.

60. Before issuing this termination letter, no Defendant gave Plaintiff notice of the grounds of her potential termination.

61. Before issuing this termination letter, no Defendant gave Plaintiff an opportunity to respond to the grounds of her potential termination.

62. Before issuing this termination letter, no Defendant gave Plaintiff a pre-termination hearing.

63. By failing to give Plaintiff a pre-termination hearing, notice of her potential termination, or an opportunity to respond, Defendants failed to give Plaintiff procedural due process.

64. By failing to give Plaintiff procedural due process, Defendant HCC violated its own policies and procedures.

65. By failing to follow its own policies and procedures, Defendant HCC breached its employment contract with Plaintiff.

66. Around the time of the termination of Plaintiff's employment, Defendant HCC also informed Plaintiff that she would not be able to remain in her housing on Defendant HCC's Utica campus.

67. Defendant HCC did not state that it was terminating Plaintiff's lease for failure to maintain the premises.

68. Defendant HCC did not state that it was terminating Plaintiff's lease because Plaintiff had defaulted on her rent.

69. By terminating Plaintiff's lease for a reason not contractually authorized, Defendant HCC breached its lease contract with Plaintiff.

70. Before terminating Plaintiff's lease, no Defendant gave Plaintiff a pre-termination hearing.

71. By failing to give Plaintiff a pre-termination hearing, Defendants failed to give Plaintiff procedural due process.

72. By failing to give Plaintiff procedural due process, Defendant HCC violated its own policies and procedures.

73. By failing to follow its own policies and procedures, Defendant HCC breached its lease contract with Plaintiff.

74. After the termination of her employment with Defendant HCC, Plaintiff sought an appeal of that decision.

75. Defendant HCC's Procedure 1015 states, in pertinent part:

> Appeals, based on the decision of the immediate Supervisor or Dean/Director *or other official in the organizational structure*, shall be submitted in writing to said Supervisor, Dean/Director, or *other official in the organizational structure* by the concerned professional level employee or group of employees.

Exhibit 3 (emphasis added).

76. Defendant Vacik signed Plaintiff's termination letter. Exhibit 4.

77. Defendant HCC's decision to terminate Plaintiff's employment was based on the decision of Defendant Vacik.

78. Per Procedure 1015, Defendant Vacik was the appropriate person to receive an appeal of Defendant HCC's decision to terminate Plaintiff's employment.

79. On August 13, 2020, Plaintiff sent a written appeal of her termination to Defendant Vacik. Exhibit 5.

80. Plaintiff followed Defendant HCC's appeal policy—Procedure 1015.

81. Defendant Vacik received Plaintiff's written appeal.

82. On August 20, 2020, Defendant Vacik wrote a second letter to Plaintiff. Exhibit 6.

83. In this letter, Defendant Vacik acknowledged that he had received Plaintiff's written appeal. *Id.*

84. In this letter, Defendant Vacik claimed that Plaintiff had not followed Defendant HCC's appeal policy. *Id.*

85. Defendant Vacik was incorrect.

86. In this letter, Defendant Vacik claimed that Plaintiff had to ask her immediate supervisor for an appeal of Defendant Vacik's decision to terminate Plaintiff. *Id.*

87. Defendant Vacik was incorrect.

88. Defendant Vacik failed to provide Plaintiff with a post-termination hearing.

89. No Defendant gave Plaintiff a post-termination hearing.

90. By failing to give Plaintiff a post-termination hearing, Defendants failed to give Plaintiff procedural due process.

91. By failing to give Plaintiff procedural due process, Defendant HCC violated its own policies and procedures.

92. By failing to follow its own policies and procedures, Defendant HCC breached its employment contract with Plaintiff.

93. After the termination of her employment with Defendant HCC, Plaintiff sought other employment.

94. Plaintiff applied for work with Jackson State University (JSU).

95. An employee or agent of JSU contacted Defendant HCC for a recommendation about whether to hire Plaintiff.

96. An agent or employee of Defendant HCC provided a negative recommendation of Plaintiff.

97. This negative recommendation was false.

98. On information and belief, Defendant Janoush provided this negative recommendation and/or caused it to be provided.

99. In doing so, Defendant Janoush knew that this negative recommendation was false or was reckless or negligent about the truth of the recommendation.

100. When making this false, negative recommendation, Defendant Janoush intended to harm Plaintiff's employment prospects.

101. Alternatively or in addition, on information and belief, Defendant Johnson provided this negative recommendation and/or caused it to be provided.

102. In doing so, Defendant Johnson knew that this negative recommendation was false or was reckless or negligent about the truth of the recommendation.

103.   When making this false, negative recommendation, Defendant Johnson intended to

harm Plaintiff's employment prospects.

104.   Alternatively or in addition, on information and belief, John Does 1-10 provided this

negative recommendation and/or caused it to be provided.

105.   In doing so, John Does 1-10 knew that this negative recommendation was false or

was reckless or negligent about the truth of the recommendation.

106.   When making this false, negative recommendation, John Does 1-10 intended to harm

Plaintiff's employment prospects.

107.   Because of this false, negative recommendation, JSU decided not to hire Plaintiff.

<u>CAUSES OF ACTION</u>

COUNT I: BREACH OF CONTRACT

108.   Plaintiff brings this claim against Defendant HCC only.

109.   Plaintiff incorporates all allegations set forth in all other parts of this complaint.

110.   Per Plaintiff's employment contract with Defendant HCC, Defendant HCC could

only terminate Plaintiff's employment due to the reduction or termination of state or

federal funds or due to employment performance or deficiency in program performance.

111.   Here, Defendant HCC terminated Plaintiff's employment for some reason other than

those contractually authorized.

112.   By terminating Plaintiff's employment for a reason that was not contractually

authorized, Defendant HCC breached its employment contract with Plaintiff.

113.   Further, per Plaintiff's lease contract with Defendant HCC, Defendant HCC could

only terminate Plaintiff's lease if Plaintiff failed or neglected to maintain the premises or

defaulted on her rent.

114.   Here, Defendant HCC terminated Plaintiff's lease for some other reason than those contractually authorized.

115.   By terminating Plaintiff's lease for a reason that was not contractually authorized, Defendant HCC breached its lease agreement with Plaintiff.

116.   Under Plaintiff's employment and lease contracts, Defendant HCC was bound to follow its own policies and procedures.

117.   Defendant HCC's policies and procedures required that Plaintiff be given procedural due process before having her employment or lease contracts terminated.

118.   Defendant HCC did not give Plaintiff procedural due process before terminating her employment or lease contracts.

119.   By failing to give Plaintiff procedural due process, Defendant HCC further violated its employment and lease contracts with Plaintiff.

120.   These contractual breaches were material.

121.   Through these contractual breaches, Defendant HCC harmed Plaintiff.

COUNT II: VIOLATION OF DUE PROCESS UNDER THE MISSISSIPPI CONSTITUTION

122.   Plaintiff brings this claim against all Defendants except John Does 1-10.

123.   Plaintiff incorporates all allegations set forth in all other parts of this complaint.

124.   Under Article 3, Section 14 of the Mississippi Constitution, "[n]o person shall be deprived of life, liberty, or property except by due process of law." Miss. Const. Art. III, § 14.

125.   Here, Plaintiff had a property interest in her employment with Defendant HCC.

126.   Here, Plaintiff had a property interest in her housing on Defendant HCC's Utica campus.

127. By terminating Plaintiff's employment, Defendants deprived Plaintiff of her property interest in her employment with Defendant HCC.

128. By terminating Plaintiff's lease, Defendants deprived Plaintiff of her property interest in her housing on Defendant HCC's Utica campus.

129. Plaintiff was entitled to procedural due process in the deprivation of her property interest in her employment and lease.

130. Defendants did not give Plaintiff a pre-termination hearing before terminating Plaintiff's employment contract.

131. Defendants did not give Plaintiff a post-termination hearing after terminating Plaintiff's employment contract.

132. Defendants did not give Plaintiff a pre-termination hearing before terminating Plaintiff's lease contract.

133. Defendants did not give Plaintiff a post-termination hearing after terminating Plaintiff's lease contract.

134. Defendants failed to give Plaintiff procedural due process in the deprivation of her property interest in her employment and lease.

135. With this failure, Defendants violated the Mississippi Constitution.

136. With this failure, Defendants harmed Plaintiff.

COUNT III: VIOLATION OF DUE PROCESS UNDER THE U.S. CONSTITUTION

137. Plaintiff brings this claim against all Defendants except John Does 1-10.

138. Plaintiff incorporates all allegations set forth in all other parts of this complaint.

139.   Under the Fourteenth Amendment of the United States Constitution, a government entity cannot "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

140.   Here, Plaintiff had a property interest in her employment with Defendant HCC.

141.   Here, Plaintiff had a property interest in her housing on Defendant HCC's Utica campus.

142.   By terminating Plaintiff's employment, Defendants deprived Plaintiff of her property interest in her employment with Defendant HCC.

143.   By terminating Plaintiff's lease, Defendants deprived Plaintiff of her property interest in her housing on Defendant HCC's Utica campus.

144.   Plaintiff was entitled to procedural due process in the deprivation of her property interest in her employment and lease.

145.   Defendants did not give Plaintiff a pre-termination hearing before terminating Plaintiff's employment contract.

146.   Defendants did not give Plaintiff a post-termination hearing after terminating Plaintiff's employment contract.

147.   Defendants did not give Plaintiff a pre-termination hearing before terminating Plaintiff's lease contract.

148.   Defendants did not give Plaintiff a post-termination hearing after terminating Plaintiff's lease contract.

149.   Defendants failed to give Plaintiff procedural due process in the deprivation of her property interest in her employment and lease.

150.   With this failure, Defendants violated the United States Constitution.

151.   With this failure, Defendants harmed Plaintiff.

COUNT IV: TORTIOUS INTERFERENCE

152.   Plaintiff brings this claim against Defendant HCC, Defendant Janoush, Defendant Johnson, and John Does 1-10.

153.   Plaintiff incorporates all allegations set forth in all other parts of this complaint.

154.   Defendant Janoush provided a false, negative recommendation about Plaintiff to JSU and/or caused such a recommendation to be provided.

155.   Alternatively or in addition, Defendant Johnson provided a false, negative recommendation about Plaintiff to JSU and/or caused such a recommendation to be provided.

156.   Alternatively or in addition, John Does 1-10 provided a false, negative recommendation about Plaintiff to JSU and/or caused such a recommendation to be provided.

157.   At the time Defendant Janoush, Defendant Johnson, and/or John Does 1-10 provided this false, negative recommendation or caused it to be provided, Defendant Janoush, Defendant Johnson, and/or John Does 1-10 knew that JSU was interested in contracting with Plaintiff.

158.   Defendant Janoush, Defendant Johnson, and/or John Does 1-10 knowingly provided a false, negative recommendation to JSU.

159.   Defendant Janoush, Defendant Johnson, and/or John Does 1-10 provided this false, negative recommendation to JSU with the intent of interfering with Plaintiff's prospective contractual relationship with JSU.

160.    In doing so, Defendant Janoush, Defendant Johnson, and/or John Does 1-10 tortiously interfered with Plaintiff's prospective contractual relationship with JSU.

161.    Defendant Janoush, Defendant Johnson, and/or John Does 1-10 tortiously interfered with Plaintiff's prospective contractual relationship with JSU in the course and scope of their employment with Defendant HCC.

162.    Defendant HCC is vicariously liable for this tortious interference.

163.    With this tortious interference, Defendant HCC, Defendant Janoush, Defendant Johnson, and/or John Does 1-10 harmed Plaintiff.

COUNT V: DEFAMATION

164.    Plaintiff brings this claim against Defendant HCC, Defendant Janoush, Defendant Johnson, and John Does 1-10.

165.    Plaintiff incorporates all allegations set forth in all other parts of this complaint.

166.    Defendant Janoush provided a false, negative recommendation about Plaintiff to JSU and/or caused such a recommendation to be provided.

167.    Defendant Janoush knew that this negative recommendation was false or was reckless or negligent about the truth of this recommendation.

168.    Alternatively or in addition, Defendant Johnson provided a false, negative recommendation about Plaintiff to JSU and/or caused such a recommendation to be provided.

169.    Defendant Johnson knew that this negative recommendation was false or was reckless or negligent about the truth of this recommendation.

170.   Alternatively or in addition, John Does 1-10 provided a false, negative recommendation about Plaintiff to JSU and/or caused such a recommendation to be provided.

171.   John Does 1-10 knew that this negative recommendation was false or was reckless or negligent about the truth of this recommendation.

172.   In publishing this statement, Defendant Janoush, Defendant Johnson, and/or John Does 1-10 published a false statement about Plaintiff to JSU.

173.   This false statement imputed to a want of professional capacity to Plaintiff.

174.   This false statement harmed Plaintiff's professional reputation.

175.   This false statement harmed Plaintiff's employment prospects.

176.   This false statement caused Plaintiff economic loss.

177.   This false statement was defamatory.

178.   In publishing this statement, Defendant Janoush, Defendant Johnson, and/or John Does 1-10 were acting within the course and scope of their employment with Defendant HCC.

179.   Defendant HCC is vicariously liable for this tortious interference.

180.   With this defamation, Defendant HCC, Defendant Janoush, Defendant Johnson, and/or John Does 1-10 harmed Plaintiff.

COUNT VI: FALSE LIGHT

181.   Plaintiff brings this claim against Defendant HCC, Defendant Janoush, Defendant Johnson, and John Does 1-10.

182.   Plaintiff incorporates all allegations set forth in all other parts of this complaint.

183.   Defendant Janoush provided a false, negative recommendation about Plaintiff to JSU
       and/or caused such a recommendation to be provided.

184.   Alternatively or in addition, Defendant Johnson provided a false, negative
       recommendation about Plaintiff to JSU and/or caused such a recommendation to be
       provided.

185.   Alternatively or in addition, John Does 1-10 provided a false, negative
       recommendation about Plaintiff to JSU and/or caused such a recommendation to be
       provided.

186.   This false, negative recommendation placed Plaintiff and/or her actions in a false
       light.

187.   Defendant Janoush, Defendant Johnson, and John Does 1-10 knew that this negative
       recommendation was false or were reckless or negligent about the truth of this
       recommendation.

188.   This false light harmed Plaintiff's professional reputation.

189.   This false light harmed Plaintiff's employment prospects.

190.   This false light caused Plaintiff economic loss.

191.   In placing Plaintiff in this false light, Defendant Janoush, Defendant Johnson, and/or
       John Does 1-10 were acting within the course and scope of their employment with
       Defendant HCC.

192.   Defendant HCC is vicariously liable for this tortious interference.

193.   By placing Plaintiff in this false light, Defendant HCC, Defendant Janoush,
       Defendant Johnson, and/or John Does 1-10 harmed Plaintiff.

REMEDIES

Plaintiff seeks all remedies available, including but not limited to the following:

a.  A final judgment declaring that the actions of Defendant described herein violate the law as alleged;

b.  Back wages;

c.  Front pay or reinstatement;

d.  Compensatory damages for emotional distress and any other non-pecuniary harms flowing from the actions alleged herein;

e.  Consequential damages and any other pecuniary harms flowing from the unlawful acts complained of herein;

f.  Punitive damages against any Defendant not immune therefrom, commensurate with the misconduct and necessary to deter violations of the law;

g.  An injunction curing the violations alleged herein, and prohibiting any future similar violations;

h.  Any other equitable relief as the court deems appropriate.

i.  Notice given to all employees regarding the violations found by this court, and notifying such employees of the order entered proscribing any future similar violations;

j.  Pre- and post-judgment interest;

k.  Attorney fees;

l.  Costs; and,

m.  Any other relief available under any applicable principle in law or equity.

Respectfully submitted on May 20, 2022,

BARBARA EVANS, Plaintiff

/s/ Jay Kucia
Jay Kucia (MSB No. 106213)
Joel F. Dillard (MSB No. 104202)
*Counsel for Plaintiff*

OF COUNSEL:

JOEL F. DILLARD, P.A.
775 N. Congress St.
Jackson, MS 39202
Telephone: 601-509-1372 (Ext. 1, Jay) (Ext. 2, Joel)
Emails: jay@joeldillard.com (Jay)
joel@joeldillard.com (Joel)



**Hinds Community College**
**Raymond, Mississippi**

## CONTRACT FOR EMPLOYMENT

EXHIBIT

tabbies®

**1**

June 25, 2020

Evans, Barbara
34175 Hwy 18, # 112 B
Utica, MS 39175

I.D. #:  1460336

Contract Dates: 7/1/2020 - 6/30/2021

Duration:  260 Days

Position:  ABE/MI-Best Instructor

| | | |
|---|---|---|
| Base Salary: | $41,400.00 | |
| Supplement: | $ | |
| Supplement: | $ | |
| Supplement: | $ | |
| Total Salary: | $41,400.00 | Payments:   12 |

I am pleased to offer you this employment contract pursuant to and subject to the terms of Section 37-29-63, Mississippi code of 1972.  In addition to the salary listed, the College matches your contribution to the F.I.C.A. Social Security Program, more than matches your contribution to your Public Employee Retirement Program, and pays in full for your hospital, dental, vision and term life insurance *(retirees are not eligible for retirement and insurance benefits)*.  Many privileges and benefits are more fully covered in the Policy and Procedural Guide of the College.

This is a conditional contract.  It is valid for the time and salary specified above, contingent on the availability and actual receipt of state and or federal funds budgeted for this purpose.  In the event of a reduction or termination of such funds, the College may reduce the salary set forth herein or terminate this contract.

The employee will be employed during said term year noted in this contract.  The employee shall be available to perform assigned duties beginning on contract dates or otherwise, as may be amended by the employer due to an emergency or other good cause in accordance with the policies and procedures of Hinds Community College.

At any time of during this contract term, it may be terminated, amended or reassigned due to employment performance or deficiency in program performance in accordance with the policies and procedures of Hinds Community College.

If this contract is acceptable to you, please sign and return the original copy to Human Resources within fifteen (15) days of the above date.

Clyde Muse, President

I accept employment under terms stated above.

Date: 6/29/20

Signed:

Sign and return original contract to Human Resources. Make a copy for your records.

**HINDS COMMUNITY COLLEGE DISTRICT**

**EMPLOYEE HOUSING LEASE AGREEMENT**

THIS LEASE AGREEMENT made and entered into by and between HINDS COMMUNITY COLLEGE DISTRICT, hereinafter called "Lessor", _____Barbara Evans_____and hereinafter called "Lessee".

WITNESSETH:

1. The Lessor, for and in consideration of the covenants and agreements herein contained, to be kept and performed on the part of Lessee, does hereby rent, lease and let unto Lessee, for rental purposes only, that certain property located at _____112-B Fourplex Main Dr. Utica Campus_____.

2. Lessee shall have and hold the said premises for a period of one year commencing on ____06/01/20____ and terminating on 6/30/21_____.

3. The rental for said premises shall be __250.00__ per month during the term of this lease, which rental shall be payable through automatic payroll deduction.

4. Lessee further agrees to place on deposit $ 0  refundable upon termination of lease agreement if all conditions of lease agreement have been satisfied. Lessee shall be responsible for any damages to the premises which would not be considered normal wear and tear to the residence. If damage has occurred, then upon a proper estimate of repairs, the damage will be deducted from Lessee's payroll check.

5. Lessee agrees to keep said premises at all times in as good condition as it is now and to deliver back said premises at the termination of this lease in as good condition as it now enjoys, normal wear and tear expected. Lessee agrees to maintain all mowed areas and curtilage around the dwelling at all times and to keep premises free of debris. Lessee is responsible for pest control service other than termite treatment. Lessee is responsible for all normal preventive maintenance and proper housekeeping. Lessor may terminate this lease at any time that Lessee shall fail or neglect to perform these obligations.

6. Lessee agrees not to make any repairs, to modify, to alter, or to paint the leased premises without consent of Lessor; and further agrees to restore and to repair any and all damage to the leased premises caused by Lessee, ordinary wear and tear expected. Lessor shall only be responsible for major necessary repairs.

7. Lessee agrees not to discharge any firearms on or in the vicinity of premises, this is to include B.B guns, pellet guns, etc.

8. Lessee shall not have the right or privilege to sublet said premises.
   a.  Only Lessee and immediate family members will reside at leased premises.

9. Lessee agrees not to engage in any unlawful occupation or business on the leased premises.

10. Lessee agrees to properly restrain any pets which are kept on the leased premises. Lessee agrees to only two pets per leased premises.

11. Lessee shall provide such insurance as Lessee deems necessary and hereby agrees to hold Lessor harmless in all respects with regard to Lessee's occupancy of the premises.

12. Should this contract be terminated because of any default on the part of the Lessee, Lessee shall nevertheless be indebted to Lessor for all rental to accrue during the term of this lease, then unpaid.

13. Lessor shall have the right of entry to inspect the leased premises at any reasonable time.

14. Lessee agrees to make all utility deposits and pay for all utility charges associated with leased premises.

15. Lessee agrees and acknowledges that this Lease Agreement is subject to, and governed by, the duly enacted policies and procedures adopted by the Board of Trustees of the Hinds Community College District, as currently in force or as subsequently amended.

EXECUTED IN DUPLICATE on this date _May 13, 2020_____

LESSEE:                                                    LESSOR:

                                                          HINDS COMMUNITY COLLEGE DISTRICT

                                                          BY: _____

_____                              Dr. Clyde Muse, President

**EXHIBIT**

**2**

**POLICY 1015 – EMPLOYEE DUE PROCESS**

The rights of professional level employees to due process of law shall not be abridged. When any such employee presents a complaint; the college shall ensure that the complaint is handled according to currently advisable procedures of due process. College officials are responsible to stay informed concerning the requirements of procedural due process and its changing interpretations by the courts.

**PROCEDURE 1015**

1. DUTIES AND RESPONSIBILITIES - It is the responsibility of the President's Cabinet, individually and collectively, to ensure that in their area of responsibility, there shall be no abridgment of the rights of professional level employees to due process of law. Where needed and when approved by the President, services of the legal counsel may be called on to ensure complete, thorough, and procedurally proper and fair actions on behalf of both the college and employee.

2. COMPLAINTS - Complaints may be relative to charges of discrimination or other general concerns.

3. CAMPUS/CENTER GENERAL COMPLAINT PROCEDURES - Due process appeal procedures shall be available to each individual or group of concerned professional employees with relation to general complaints.

Appeals, based on the decision of the immediate Supervisor or Dean/Director or other official in the organizational structure, shall be submitted in writing to said Supervisor, Dean/Director, or other official in the organizational structure by the concerned professional level employee or group of employees. The written complaints shall be submitted through the organizational structure to the appropriate Vice President, to the President, and then if necessary to the Board. Appeals, if any, from each decision shall be submitted formally into the appeals process no later than 30 days following the decision upon which the appeal is based.

4. PROCEDURES FOR DISCRIMINATION CHARGES - When a charge of discrimination of any kind has been made or when in the opinion of the immediate Supervisor or Director it appears probable that a charge of discrimination may develop, it shall be the duty of that person to advise immediately the Vice President for Utica Campus/Vicksburg-Warren County Campus and Administrative and Student Services.

a. The Vice President for Utica Campus/Vicksburg-Warren County Campus and Administrative and Student Services, when so notified, shall commence an
94
immediate investigation to gather and document all facts of the case possible and ascertain it, in fact, discrimination did occur.

b. The Vice President for Utica Campus/Vicksburg-Warren County Campus and Administrative and Student Services shall, if possible, obtain a written statement alleging the discrimination complaint and background on the complaint from the complainant. If not possible to get a written statement, the Vice President for Utica Campus/Vicksburg-Warren County Campus and Administrative and Student Services should attempt to get the specifics of the complaint from verbal and/or written comments of the complainant or other persons involved with the incident. Once a sufficient amount of information is obtained, the Vice President for Utica Campus/Vicksburg-Warren County Campus and Administrative and Student Services shall:

**EXHIBIT**

tabbies

**3**



# HINDS COMMUNITY COLLEGE

Office of the President • P.O. Box 1100 • Raymond, Mississippi 39154-1100
601.857.3240 • Fax: 601.857.3518 • e-mail: president@hindscc.edu

July 24, 2020

**Certified Mail**

Ms. Barbara Evans
34175 Highway 18 # 112B
Utica, MS 39175

Dear Ms. Evans:

Upon the recommendation of your direct report, Mrs. Kristi Johnson, Director of Adult Education and approval of Dr. Robin Parker, District Dean of Community and Economic Development and Dean of Career/Technical Education, we are ending the term of your employment effective July 31, 2020. This will terminate your position as Adult Education MI Best Instructor, Utica Campus within the Hinds Community College District.

If you have questions concerning this termination, please contact the Hinds Community College Human Resources Manager at 601-857-3201.

Sincerely,

Dr. Stephen Vacik
President

SV/jj

Copy:  Mrs. Kristi Johnson
        Dr. Robin Parker
        Dr. Chad Stocks
        Ms. Gay Lynn Caston
        Ms. Connie Bain

Raymond Campus • Rankin Campus • Utica Campus • Vicksburg-Warren Campus
Jackson Campus-Academic/Technical Center • Jackson Campus-Nursing/Allied Health Center
*www.hindscc.edu*

**EXHIBIT**

**4**

*Copy.*

August 13, 2020

Hinds Community College
Dr. Stephen Vacik
Office of the President
Raymond, MS 39154-1100

Dear Dr. Vacik:

Thank you for taking the time to read and consider my letter. As you may know, I was notified that my employment with Hinds Community College, Adult Education Department as an AE/MiBest Instructor-Utica Campus was terminated on July 31, 2020 effective immediately. I was also given five (5) days to vacant the apartment on the Utica Campus where I lived (in the middle of a pandemic). I received a certified letter on Tuesday, August 4, 2020. I feel that I was sorely mistreated as an employee. I am requesting a hearing to discuss my termination and the manner in which I was terminated.

I was told by Dr. Stocks, Vice President of Workforce Development the reason for this decision was due to cutting back on staff and the decrease in enrollment per Dr. Vacik, President. I was shocked, by such a decision because Dr. Parker reassured the entire staff (via Zoom meeting) our jobs were secure, all grants were approved, and all our contracts would be renewed. Kristi Johnson (Director) and Lauren Parker (Director) were also in the Zoom meeting. I signed my 2020-21 contract in June 29, 2020 and turned it in to Human Resources.

I believe that a mistake has been made in my case. I have worked for Hinds Community College for eight years; before the pandemic, I have consistently received praise for my work ethnic and performance. Dr. Stocks has shown appreciation for my hard work over the years. I must say, Dr. Parker has shown the same enthusiasm about my work.

I believe that my termination is unfair since I never received any indication of cuts within the department or me being terminated from my position for any reason.

Again, I would like the opportunity to discuss my situation with you. Please let me know when you are available.

Regards,

Barbara Evans

---

EXHIBIT

5



# HINDS COMMUNITY COLLEGE
Office of the President • P.O. Box 1100 • Raymond, Mississippi 39154-1100
601.857.3240 • Fax: 601.857.3518 • e-mail: president@hindscc.edu

August 20, 2020

Ms. Barbara Evans
544 Hillandale Drive
Jackson, MS 39212

Dear Ms. Evans,

I am in receipt of your letter dated August 13, 2020 requesting a hearing to discuss your termination.

Hinds Community College Policy outlines due process for professional level employees. A copy of this policy is enclosed for your review. Please take note of item three of the procedure which reads "Appeals based on the decision of the immediate Supervisor/Dean Director, or other official in the organizational structure by the concerned professional level employee or group of employees. The written complaints shall be submitted through the organizational structure to the appropriate Vice President, to the President and then if necessary to the Board. Appeals, if any, from each decision shall be submitted formally into the appeals process no later than 30 days following the decision upon which the appeal is based."

If you desire to enter an appeal regarding your termination, it is necessary that you follow the procedure as described, which requires that you file your specific complaint in writing to your immediate supervisor.

Best regards,

Stephen Vacik, President

EXHIBIT
6